HELLEN G. PRESSLEY v. THOMAS D. PRESSLEY.

(Filed 26 February 1964.)

**1. Divorce and Alimony § 16—**

A wife is entitled to reasonable subsistence and counsel fees from the estate or earnings of her husband if he is guilty of misconduct which would entitle her to divorce, either absolute or from bed and board. G.S. 50-16.

**2. Divorce and Alimony § 8—**

One spouse is not justified in leaving the other unless the conduct of the other is such as to render it impossible for the first to continue the marital relation with safety, health and self-respect, and is sufficient to constitute ground for divorce, at least from bed and board.

**3. Divorce and Alimony § 16— Evidence held insufficient predicate for instruction on principle that separation induced by misconduct of wife would not constitute abandonment.**

In this action by the wife for alimony without divorce the defendant offered no evidence and the wife's testimony on cross-examination tended to show, at most, that the person asserted by the husband to be the wife's paramour was a friend of the husband and visited in the home on one occasion for a short time early in the evening, that on this occasion all the lights were on and all the doors and windows open and the child of the marriage was awake and in their presence, that she had not committed adultery, and that she had fussed with her husband only over his affair with a woman he had taken on a trip to Florida with him and in regard to his staying out at night. *Held:* The evidence of plaintiff's conduct elicited on cross-examination is insufficient predicate for an instruction on the principle of law that if the conduct of the wife was such as to induce the conduct of the husband relied on as an abandonment, plaintiff would not be entitled to the relief sought, and the giving of such instruction constitutes prejudicial error.

**4. Trial § 33—**

It is error for the court to charge on a principle of law not presented by any view of the evidence.

APPEAL by plaintiff from *Patton, J.*, April 1963 Special Session of HAYWOOD.

Civil action by wife for alimony without divorce, in which she prays for maintenance and support of herself and a seven-year-old son born of the marriage, for the custody of the child, and for counsel fees pursuant to the provisions of G.S. 50-16.

The complaint alleges in substance: (1) marriage of the parties on 5 July 1944; (2) that on 11 November 1961 the defendant without just cause abandoned plaintiff and their minor child, left the State of North Carolina, and has failed to provide them with necessary subsistence according to his means and condition in life; (3) that defendant by cruel and barbarous treatment endangered plaintiff's life and offered such indignities to her person as to render her condition intolerable and life burdensome (we omit the nine specific allegations of such treatment); (4) that plaintiff has at all times been a good and faithful wife; (5) that a son was born of the marriage on 18 February 1955 and resides with plaintiff; (6) that plaintiff is a fit and suitable person to have the custody of their son, and that defendant is not; (7) that defendant is an able-bodied and experienced paint and body mechanic and businessman capable of earning $200 per week and owns considerable property in Haywood County; and (8) that plaintiff is without money for the support of herself and their minor child, and is ill and unable to work.

Defendant in his answer, while admitting the marriage and the birth of a child of the marriage, denies the material allegations of the complaint. By way of defense he alleges in substance that throughout their married life plaintiff nagged and fussed with him, refused to prepare meals for him, threatened his life, and by reason of such threats and fears for his health and safety he was forced to leave his home and live apart from her and his son. That in the summer of 1962 and on other occasions plaintiff committed adultery with Tom Hyatt. When he left North Carolina in April 1962 to obtain work, he left a bank account in the amount of about $800, and since then he has caused money to be paid to her.

Plaintiff's evidence tends to show the following facts: The marriage between the parties and the birth of the child as alleged in the complaint; frequent absences of defendant from his home in 1961; defendant's telling plaintiff he took one Mary Rose Poteat with him to Atlanta; his cursing of plaintiff and assaulting her on 14 July 1961; his

leaving North Carolina on 15 April 1962 and going to Wyoming leaving his wife in possession of a mortgaged house owned by them by the entireties, valued at $15,000, and a Ford automobile valued at $1,500. There was in Canton a joint bank account with a balance of $732. Defendant's brother gave plaintiff $200 in April 1962; Bud Pressley gave her $80 on 12 May 1962, and defendant sent her a money order from Colorado or Wyoming for $100 on 15 June 1962, and another $100 on 14 July 1962. When defendant left North Carolina his income was in excess of $200 a week, and he owned a 40% interest in Pressley Paint and Body Works on the Asheville Highway, which had a gross income in 1961 of $56,000. She never threatened to kill defendant or herself or their child. She did not nag and harass defendant, though she occasionally fussed with him when he came home late. She cooked his meals. She instituted this action 24 July 1962.

Defendant offered no evidence.

The court submitted the following issues to the jury which were answered as appears:

"1. Were the plaintiff and defendant married as alleged in the complaint?

"Answer: Yes.

"2. Has the plaintiff been a resident of the State of North Carolina for more than six months prior to the institution of this action?

"Answer: Yes.

"3. Did the defendant wilfully abandon the plaintiff and their minor child, as alleged in the complaint?

"Answer: No.

"4. Did the defendant offer such indignities to the person of the plaintiff as to render her condition intolerable and life burdensome, as alleged in the complaint?

"Answer: No."

From a judgment that plaintiff recover nothing by reason of her action and taxing her with the costs, she appeals.

*Wade Hall for plaintiff appellant.*

*Ferguson & McDarris by Frank D. Ferguson, Jr., and Lee, Lee & Cogburn by Max O. Cogburn for defendant appellee.*

PARKER, J. Plaintiff is suing for alimony without divorce under G.S. 50-16. By the terms of this statute, a wife may institute an action in the

superior court to have a reasonable subsistence and counsel fees allotted and paid or secured to her from the estate or earnings of her husband, if he "be guilty of any misconduct or acts that would be or constitute cause for divorce, either absolute or from bed and board." G.S. 50-7 provides, "The superior court may grant divorces from bed and board on application of the party injured, made as by law provided, in the following cases: 1. If either party abandons his or her family; * * * 3. By cruel or barbarous treatment endangers the life of the other; 4. Offers such indignities to the person of the other as to render his or her condition intolerable and life burdensome."

The third issue submitted to the jury reads as follows: "Did the defendant wilfully abandon the plaintiff and their minor child, as alleged in the complaint?" The jury answered this issue, "No." When the trial judge in his charge reached the third issue, he read it to them, instructed them that the burden of proof of this issue was upon plaintiff, that this issue is based on G.S. 50-7, 1, which provides that the superior court may grant divorces from bed and board on application of the party injured, if either party abandons his or her family, and then charged in substance that abandonment consists of the voluntary separation of one spouse from the other without the latter's consent, without justification and without the intention of returning, that it must be wilful, intentionally done, without just cause or justification. Then he immediately thereafter instructed the jury as follows, which is assigned as error:

> "The court further instructs you that when the misconduct of the plaintiff, that is, the person who brings the action in an action of this nature, is calculated to and does reasonably induce the conduct of the defendant relied upon in this case, then the plaintiff could not be permitted to take advantage of the plaintiff's own wrong. You will note from the reading of that particular statute that remedy is available in cases to the husband for that matter as well as the wife. But in this case it is the wife bringing the action against the husband."

In support of this challenged part of the charge, defendant relies upon what this Court said in *Byers v. Byers*, 223 N.C. 85, 25 S.E. 2d 466: "We have also held that when the misconduct of the complaining party in an action for divorce *a mensa et thoro* is calculated to and does reasonably induce the conduct of the defendant, relied upon in the action, he or she, as the case may be, will not be permitted to take advantage of his or her own wrong, and the decree of divorcement will be denied. *Page v. Page*, 161 N.C. 170, 76 S.E. 619."

In *Page v. Page*, 161 N.C. 170, 76 S.E. 619, it is said:

"If the cruelty set up as a ground of divorce was provoked by the misconduct of the complainant, a divorce will not be granted. 14 Cyc., 631. If his conduct had been such as to entitle her to a divorce, but was induced by the continued exasperation and violence of the wife, or other misconduct on her part, the same result would follow. There was no retaliation by the husband in this case, and certainly no excessive retaliation. Their domestic infelicity is apparently all due to the wife's misconduct. It is settled by our decisions that, where the wife is the aggressor and by her conduct provoked that of her husband, of which she complains, and it was calculated to do so, it is a bar to her application for a divorce and for alimony. [Citing authority.] No one will be allowed to take advantage of his or her own wrong."

Plaintiff contends in reply that defendant offered no evidence, and that there is nothing in plaintiff's evidence tending to show any misconduct on her part calculated to and reasonably inducing her husband to abandon her and their son. Defendant contends that "the cross-examination of plaintiff yielded evidence bearing upon the conditions in the home of the parties and upon the conduct of the plaintiff as alleged in the answer" sufficient to support the challenged instruction, but none of this alleged evidence is set forth in his brief.

Plaintiff's testimony on cross-examination is in substance: She met Tom Hyatt in 1949 through her husband. She has seen him on the street in Canton and waved to him. He lives six or eight blocks from their home, and between 7 and 9 p.m. in August 1962 he was in their home and stayed about an hour. During that time all the doors and windows were open, and the lights were on. He had telephoned her and asked if he could come over. When Tom Hyatt's wife arrived at her house, she did not black her eye. Mrs. Hyatt did not touch her and said nothing to her. Mrs. Hyatt's eye did not get blackened. Mrs. Hyatt was alone and stayed 15 or 20 minutes. She has not cursed her husband. She has nagged him and accused him of going out with other women. When her husband came in late she would occasionally fuss with him. She never went to bed until he came in. She didn't always object to his going out at night.

Immediately thereafter on redirect examination plaintiff testified: "When Tom Hyatt was at the house David [their son] was there. He was awake and sitting at the table with us."

On direct examination plaintiff testified in substance: She had never committed adultery with Tom Hyatt. He came to her house in the fall, and they talked about the separation between herself and her husband, and Hyatt's wife and her ailments. Tom Hyatt and her husband have

been friends since 1949. She talked to him about her domestic problems, and he said he was going to talk to defendant and see if he would not come home. This was during the summer and the doors and blinds were open and the lights on, and they were sitting at the kitchen table.

Plaintiff's testimony is to the effect that before defendant left her and their son he told her he had carried one Mary Rose Poteat with him to Atlanta. June Johnson, a witness for plaintiff, testified in effect that in the summer of 1961 she saw defendant and Mary Rose Poteat meet at Balsam Gap, he put her suitcase in his automobile, and they left together. Plaintiff offered evidence that she bears the general reputation of being a woman of good character.

The presence of Tom Hyatt at plaintiff's home in August 1962 did not induce defendant to leave her, because he had gone to Wyoming or some far western state in April 1962. Surely, it cannot be seriously argued that plaintiff's fussing with defendant over his affair with Mary Rose Poteat and his staying out at night made her the aggressor, and justified him in leaving her. "Ordinarily, however, the withdrawing spouse is not justified in leaving the other unless the conduct of the latter is such as would likely render it impossible for the withdrawing spouse to continue the marital relation with safety, health, and self-respect, and constitute ground in itself for divorce at least from bed and board." *Caddell v. Caddell,* 236 N.C. 686, 73 S.E. 2d 923.

In our opinion, and we so hold, there is nothing in plaintiff's evidence tending to show that she was the aggressor and was guilty of misconduct calculated to and which did reasonably induce the conduct of defendant in leaving her and their son so as to bar her application for alimony without divorce. Defendant it is true has *allegata* of his wife's misconduct, but such *allegata* finds no support in plaintiff's evidence, as he contends.

"It is error to charge on an abstract principle of law not supported by any view of the evidence." *Andrews v. Sprott,* 249 N.C. 729, 107 S.E. 2d 560. The challenged instruction to the jury was upon an abstract principle of law finding no support in the evidence and was highly prejudicial to plaintiff, if not disastrous, and for such error plaintiff is entitled to a

New trial.